**ATTACHMENT A - NOTICE ON CONSENT OF AMENDMENT TO THE
DEFERRED PROSECUTION AGREEMENT**

**INDEPENDENT COMPLIANCE MONITOR AGREEMENT**

The duties and authority of the Independent Compliance Monitor (the "Monitor"), and the obligations of Standard Chartered Bank ("SCB"), a financial institution registered and organized under the laws of England and Wales, on behalf of itself and its subsidiaries and affiliates, with respect to the Monitor and the United States Department of Justice (the "Department"), are as described below.  To the extent that SCB's compliance with its obligations as set forth below requires it, SCB agrees to require that its subsidiaries and affiliates comply with the requirements and obligations set forth below, to the extent permissible under locally applicable laws and regulations, and the instructions of local regulatory agencies.

1.      For a period of up to 36 months from the date of his or her engagement (the "Term of the Monitorship") the Monitor will evaluate, in the manner set forth in Paragraphs 2 through 8 below, the effectiveness of the internal controls, policies and procedures of SCB and its subsidiaries (collectively, "SCB Group") as they relate to (a) SCB Group's ongoing compliance with the International Emergency Economic Powers Act and other applicable U.S. economic sanctions laws and any and all regulations promulgated thereunder (collectively, "U.S. Sanctions Laws") and (b) the enumerated remedial measures identified in paragraphs 4 and 5 of the Deferred Prosecution Agreement ("DPA") and paragraphs 107 and 108 of Exhibit A to the DPA (the "Factual Statement").  The Monitor will take such reasonable steps as, in his or her view, may be necessary to fulfill the foregoing mandate (the "Mandate").

2.      SCB shall fully cooperate with the Monitor, and the Monitor shall have the authority to take such reasonable steps as, in his or her view, may be necessary to be fully informed about SCB's compliance program within the scope of the Mandate in accordance with

A-1

the principles set forth herein and applicable law, including applicable data protection and labor laws and regulations. To that end, SCB shall: facilitate the Monitor's access to SCB Group's documents and resources; not limit such access, except as provided in this paragraph; and provide guidance on applicable local laws (such as relevant data protection and labor laws). SCB shall provide the Monitor with access to all information, documents, records, facilities and/or employees, as reasonably requested by the Monitor, that fall within the scope of the Mandate of the Monitor under this Agreement. Any disclosure by SCB to the Monitor concerning possible violations of U.S. Sanctions Laws shall not relieve SCB of any otherwise applicable obligation to truthfully disclose such matters to the Department.

   a. The parties agree that no attorney-client relationship shall be formed between SCB and the Monitor.

   b. In the event that SCB seeks to withhold from the Monitor access to information, documents, records, facilities and/or employees of SCB Group that may be subject to a claim of attorney-client privilege or to the attorney work-product doctrine, or where SCB reasonably believes production would otherwise be inconsistent with applicable law, SCB shall work cooperatively and in good faith with the Monitor to resolve the matter to the satisfaction of the Monitor. If the matter cannot be resolved, at the request of the Monitor, SCB shall promptly provide written notice to the Monitor and the Department. Such notice shall include a general description of the nature of the information, documents, records, facilities, and/or employees that are being withheld, as well as the basis for the claim. The Department may then consider whether to make a further request for access to such information, documents, records, facilities, and/or employees. To the extent that SCB or any entity within SCB Group has provided information to the Department in the course of the investigation leading to this action pursuant to

a non-waiver of privilege agreement, SCB and the Monitor may agree to production of such information to the Monitor pursuant to a similar non-waiver agreement.

      3.      To carry out the Mandate, during the Term of the Monitorship the Monitor shall review SCB's U.S. economic sanctions compliance program and prepare an initial report, followed by at least two (2) follow-up annual reports as described below. At the beginning of the Term of the Monitorship and annually after that, after meeting and consultation with SCB and the Department, the Monitor shall prepare a written work plan. The work plan for the first year shall be submitted within sixty (60) calendar days of the Monitor's selection. The work plan for subsequent years shall be submitted no fewer than sixty (60) calendar days prior to the anniversary of the monitor's selection. SCB and the Department will then have no more than thirty (30) days after receipt of the written work plan to provide comments to the Monitor. The Monitor's work plan for the first year shall include such steps as are reasonably necessary to conduct an effective review in accordance with the Mandate, including by developing an understanding, to the extent the Monitor deems appropriate, of the facts and circumstances surrounding any violations that may have occurred before the date of filing the Amendment to the DPA with the Court. In developing such understanding the Monitor is to rely to the extent possible on available information and documents provided by SCB; it is not intended that the Monitor will conduct his or her own inquiry into those historical events. In developing each work plan, the Monitor is encouraged to coordinate with SCB Group personnel including auditors and compliance personnel and, to the extent the Monitor deems appropriate, the Monitor may rely on SCB Group processes, on the results of studies, reviews, audits and analyses conducted by or on behalf of SCB Group and on sampling and testing methodologies. The Monitor is not expected to conduct a comprehensive review of all business lines, all business

activities, or all markets.  Any disputes between SCB and the Monitor with respect to the work plans shall be decided by the Department in its sole discretion.

  4. The Monitor shall issue the initial report no later than 180 days from the date of the engagement of the Monitor, setting forth the Monitor's assessment and making recommendations reasonably designed to improve the effectiveness of SCB Group's program for ensuring compliance with U.S. Sanctions Laws as well as SCB Group's implementation and adherence to the remedial measures in the DPA and the Factual Statement.  The Monitor is encouraged to consult with SCB concerning his or her findings and recommendations on an ongoing basis, and to consider and reflect SCB's comments and input to the extent the Monitor deems appropriate.  The Monitor need not in his or her initial or subsequent reports comprehensively recite or describe SCB Group's history or compliance policies, procedures and practices, but rather may focus on those areas with respect to which the Monitor wishes to make recommendations for improvement or which the Monitor otherwise concludes merit particular attention.  The Monitor shall provide the report to the Board of Directors of SCB and contemporaneously transmit copies to the Chief of the Asset Forfeiture and Money Laundering Section, Criminal Division, U.S. Department of Justice, at 1400 New York Avenue N.W., Bond Building, Tenth Floor, Washington, DC 20530; the United States Attorney's Office for the District of Columbia; the District Attorney's Office of New York County; the Board of Governors of the Federal Reserve System, and the United Kingdom's Financial Conduct Authority.  After consultation with SCB, the Monitor may extend the time period for issuance of the report for up to thirty (30) calendar days with prior written approval of the Department.

  5. Within ninety (90) calendar days after receiving the Monitor's report, SCB shall adopt all recommendations in the report.  However, within thirty (30) calendar days after

A-4

receiving the report, SCB shall notify the Monitor and the Department in writing of any recommendations that SCB considers unduly burdensome, inconsistent with local or other applicable law or regulation, impractical, costly, or otherwise inadvisable. With respect to any recommendation that SCB considers unduly burdensome, inconsistent with local or other applicable law or regulation, impractical, costly or otherwise inadvisable, SCB need not adopt that recommendation within ninety (90) days of receiving the Monitor's report, but shall propose in writing an alternative policy, procedure, or system designed to achieve the same objective or purpose. As to any recommendation on which SCB and the Monitor do not agree, such parties shall attempt in good faith to reach an agreement within thirty (30) calendar days after SCB serves the written notice. In the event that SCB and the Monitor are unable to agree on an acceptable alternative proposal, SCB shall promptly consult with the Department, which will make a determination as to whether SCB should adopt the Monitor's recommendation or an alternative proposal, and SCB shall abide by that determination. Pending such determination, SCB shall not be required to implement any contested recommendation(s). With respect to any recommendation that the Monitor determines cannot reasonably be implemented within ninety (90) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Department.

6.      The follow-up written reports should be submitted no later than 120 days after the anniversary of the engagement in years two and three of the Term of the Monitorship. As part of these written reports, the Monitor shall: (a) certify whether the compliance program of SCB Group, including its policies and procedures, is reasonably designed and implemented to detect and prevent violations within SCB Group of U.S. Sanctions laws; (b) certify whether SCB is implementing and adhering to the remedial measures set forth in the DPA and the Factual

Statement; and (c) report on the Monitor's findings in the same fashion as set forth in paragraph 4 with respect to the initial report.

7.      In undertaking the assessments and reviews described in Paragraphs 3 through 6 of this Agreement, the Monitor shall formulate conclusions based on, among other things:  (a) inspection of relevant documents, including SCB Group's current U.S. Sanctions Laws policies and procedures; (b) on-site observation of selected systems and procedures of SCB Group at sample sites, including internal controls and record-keeping and internal audit procedures; (c) meetings with, and interviews of, relevant employees, officers, directors and other persons at mutually convenient times and places; and (d) analyses, studies and testing of SCB Group's compliance program with respect to U.S. Sanctions Laws.

8.      Should the Monitor, during the course of his or her engagement, discover that SCB Group or any individual within SCB Group has engaged in questionable, improper or illegal practices with respect to U.S. Sanctions Laws (a) after the date on which the Amendment to the DPA is signed or (b) that have not been adequately dealt with by SCB Group (collectively "improper activities"), the Monitor shall promptly report such improper activities to SCB's General Counsel for the Americas for further action.  If the Monitor believes that any improper activity or activities may constitute a significant violation of law, the Monitor should also report such improper activity to the Department.  The Monitor should disclose improper activities in his or her discretion directly to the Department, and not to the General Counsel for the Americas, only if the Monitor believes that disclosure to the General Counsel for the Americas would be inappropriate under the circumstances, and in such case should disclose the improper activities to the General Counsel for the Americas of SCB as promptly and completely as the Monitor deems appropriate under the circumstances.  The Monitor shall address in his or her reports the

appropriateness of SCB's response to all improper activities, whether previously disclosed to the Department or not.  Further, in the event that SCB, or any entity or person working directly or indirectly within SCB Group, refuses to provide information necessary for the performance of the Monitor's responsibilities, if the Monitor believes that such refusal is without just cause the Monitor shall disclose that fact to the Department.  SCB shall not take any action to retaliate against the Monitor for any such disclosures or for any other reason.  The Monitor may report any criminal or regulatory violations by SCB Group or any other entity discovered in the course of performing his or her duties, in the same manner as described above.

9.       The Monitor shall meet with the Department within thirty (30) days after providing each report to the Department to discuss the report.  The reports will likely include proprietary, financial, confidential, and competitive business information.  Moreover, public disclosure of the reports could discourage cooperation, impede pending or potential government investigations, and thus undermine the objectives of the monitorship.  For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or to the extent that the Department determines in its sole discretion that disclosure would be in furtherance of the Department's discharge of its duties and responsibilities or is otherwise required by law.

10.      At least annually, and more frequently if appropriate, representatives from SCB and the Department will meet together to discuss the monitorship and any suggestions, comments, or improvements SCB may wish to discuss with or propose to the Department.